# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 23-1768V

| | |
|---|---|
| IRINA IOFFE,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: November 19, 2025 |

*Scott B. Taylor*, Urban & Taylor, S.C., Milwaukee, WI, for Petitioner.

*James Vincent Lopez*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On October 10, 2023, Irina Ioffe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine received on November 16, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months, and

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that she has satisfied all of the requirements for a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

On July 9, 2024, Respondent filed his Rule 4(c) Report contending that "Petitioner has not established that she suffered from her alleged SIRVA injury for more than six months post-vaccination." Rule 4(c) Report at 6. Petitioner subsequently filed a Motion for Judgment on the Administrative Record ("Mot.") on August 20, 2024. ECF No. 20, 22. Respondent filed a response ("Resp.") on November 6, 2024. ECF No. 24.

I proposed that the parties be given the opportunity to argue their positions regarding entitlement during an expedited hearing, which was held on November 17, 2025.[3] ECF No. 27.

## II.    Relevant Facts

Petitioner received both flu and Covid-19 vaccines in her left deltoid on November 16, 2021. Ex. 1 at 5, 7. She stated that she received the Covid-19 vaccine first, and then the flu vaccine, which was given higher up on the arm. Ex. 2 at ¶6. Petitioner recalled that she called her brother-in-law, who is a doctor, on the evening of her vaccination. Ex. 2 at ¶9. She remembered that he told her that her symptoms may be normal and to wait up to a week for improvement. *Id*. Her brother-in-law filed an affidavit confirming the conversation. Ex. 10 at ¶4.

One week after vaccination, Petitioner saw her brother-in-law and he examined her shoulder. Ex. 2 at ¶11; Ex. 10 at ¶5. He told her to see her primary care provider ("PCP") if it had not improved in two weeks. *Id*.

Petitioner saw her PCP on December 8, 2021 (22 days after vaccination). Ex. 5 at 46. She was diagnosed with adhesive capsulitis and tendonitis, prescribed a Medrol dosepak and Celebrex, and referred to physical therapy. *Id*. at 54. She attended five sessions of physical therapy between December 9-30, 2021. Ex. 7 at 2-18. Her plan of care involved three sessions per week through February 25, 2022. *Id.* at 18. Petitioner has stated that therapy only worsened her pain, and that as she is a single mother of two children with a full-time job, she decided to see whether the pain would subside without additional treatment. Ex. 2 at ¶14-15.

---

[3] At the end of the hearing held on November 17, 2025, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

Petitioner's brother-in-law recalled talking to her at the end of 2021 or beginning of 2022 about her shoulder pain. Ex. 10 at ¶6. He stated that he advised Petitioner "that these type of orthopedic injuries tend to take a long time to resolve" and that "recovery from frozen shoulder is a long process" so she could prepare "to deal with the pain for an extended period of time." *Id*. Petitioner stated that she "relied on this advice, had no reason to doubt that this advice . . ., and attempted to work through the pain as best as [she] could during the time when [she] was not actively treating with a medical provider." Ex. 13 at ¶2. Petitioner alleged that she "faithfully" performed her HEP during the entire gap in treatment. *Id*. at ¶5, 7.

Petitioner's mother filed an affidavit in which she states that she helped Petitioner with several tasks after her vaccination, including bathing, dressing, and household chores. Ex. 11 at ¶6. She stated that in the first half of 2022, she "personally observed Irina perform daily exercises for her left shoulder, using restrictive bands and doing exercise from a written set of instructions." *Id*. at ¶8. She recalled that Petitioner could not drive long distances, so she would drive Petitioner's children to their activities. *Id*. at ¶6.

Petitioner's brother-in-law recalled seeing her again during the summer of 2022, when he learned that she had not returned to the doctor despite continuing symptoms. Ex. 10 at ¶7. He advised her to return to her PCP and to follow the doctor's advice with respect to her shoulder pain. *Id*.

Petitioner then resumed treatment on July 29, 2022 (now eight months post-vaccination). Ex. 5 at 24. She told her PCP that she was "still having pain" and that physical therapy had helped, but not fully. *Id*. The doctor ordered an MRI, referred her to orthopedics, and prescribed Celebrex and tizanidine. *Id*. at 31.

Petitioner saw an orthopedist on August 16, 2022. Ex. 4 at 2. Thereafter, she had two cortisone injection (one post-surgical), an MRI, surgery, and post-surgical PT. Ex. 4; Ex. 7; Ex. 8.

### III. Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at

\*4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at \*3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at \*20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at \*19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering

such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.   Findings of Fact - Severity

To satisfy the statutory severity requirement based on the facts of this case, Petitioner must demonstrate that her symptoms more likely than not continued until at least May 16, 2022 – six months after the onset of her pain on November 16, 2021. The record establishes (and the parties agree) that Petitioner treated her left shoulder pain through December 30, 2021, approximately six weeks after her vaccination – and then did not seek shoulder-related care again until July 29, 2022 – more than six months later and beyond the severity threshold. Respondent contends that the gap in treatment defeats Petitioner's claim because it "cannot be explained by a steroid injection or other pain management" and because her later shoulder treatment "cannot reasonably be attributed to her flu vaccination." Resp. at 2.

But – Petitioner has provided a credible explanation for why she did not continue to treat her shoulder pain. She stated that she consulted her brother-in-law, who is a doctor, about her symptoms and followed his advice. *See* Ex. 2 at ¶2, 11; Ex. 13 at ¶2. Petitioner's brother-in-law filed an affidavit confirming the same facts. *See* Ex. 10. Petitioner's medical records are also consistent with the testimony. First, Petitioner's brother-in-law advised her to wait a week for symptoms to subside. Ex. 10 at ¶4; Ex. 2 at ¶9. He then examined her shoulder personally after that week and advised Petitioner to seek medical care if her symptoms continued for two additional weeks. *Id*. at ¶5; Ex. 2 at ¶11. Petitioner saw her PCP *twenty-two* days (almost exactly three weeks) after her vaccination. *See* Ex. 5 at 46. Then, Petitioner explained, although she had physical therapy treatment planned through February 2022, she stopped it because she felt it exacerbated her pain, and was difficult to pursue with her responsibilities as a working single mother. Ex. 2 at ¶14-15; Ex. 7 at 18. Further, Petitioner's brother-in-law had advised her, around the same time, that recovery would be a long process. Ex. 10 at ¶6; Ex. 13 at ¶2. And, he maintains, when he learned that Petitioner had not returned to treatment by the summer of 2022 despite continuing symptoms, he advised that she seek

additional treatment. Ex. 10 at ¶7. Petitioner stated that she relied on his advice and returned to treatment on July 29, 2022, and continue treating thereafter. Ex. 5 at 24; Ex. 13 at ¶2.

Further, when Petitioner resumed treatment after the gap, she reported to her PCP that she was "still having pain" from her flu shot the previous November and that the course of physical therapy had provided some, but not complete relief. Ex. 5 at 24. There is no evidence that Petitioner's shoulder pain had resolved prior to her July 29, 2022 appointment (and other evidence that it had not)[4] and no evidence in the record of an alternative cause for her symptoms since her flu shot. Petitioner also did not seek medical treatment for other conditions during which she failed to report shoulder pain.

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on the issue of severity. Of course, gaps in treatment always inform any award for Petitioner's pain and suffering, which Petitioner should consider when formulating her demand for damages.

## V.     Ruling on Entitlement

### A.     *Requirements for Table SIRVA*

Respondent concedes that "the submitted evidence satisfies the [SIRVA] QAI criteria." Rule 4(c) Report at 5; *See* 42 C.F.R. § 100.3(c)(10)(i-iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B.     *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine in her left arm on November 16, 2021. Ex. 1 at 5; Section 11(c)(1)(A) (requiring receipt of a covered vaccine). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the

---

[4] Petitioner's mother provided an affidavit in which she stated that during the gap in treatment, she helped Petitioner with bathing, dressing, household chores, and driving her children, and personally observed Petitioner performing her home exercises for her shoulder. Ex. 11 at ¶6, 8. Petitioner's former partner also filed an affidavit in support of her claim in which he states that spoke to and saw Petitioner regularly throughout 2022 and "during each such interaction with Irina, she would let [him] know that her left shoulder was in significant pain and that her range of motion had not returned." Ex. 12 at ¶7.

contrary. Ex. 2 at ¶31-32; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master